UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| CLEMENCE MUCYO,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | No. 1:26-CV-497-H |

**ORDER**

Before the Court is Clemence Mucyo's petition for a writ of habeas corpus. Dkt. No. 1. Mucyo, a native and citizen of Rwanda, alleges (1) her continued civil immigration detention violates 8 U.S.C. § 1231 under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and (2) she is entitled to advance notice of any third-country removals under the Fifth Amendment's Due Process Clause. *Id.* at 9–10.

Both claims fail. Mucyo concedes that her ongoing detention falls within *Zadvydas*'s presumptively reasonable six-month window. *Id.* at 9 ("[Mucyo] does not contend that her present detention has exceeded the six-month period discussed in [*Zadvydas*]."). And the notice Mucyo requests is at issue with ongoing litigation at the Supreme Court in *United States Department of Homeland Security v. D.V.D.*, No. 26-426, 2026 WL 2917860 (U.S. Sept. 29, 2026). The Supreme Court has stayed the lower court's decision, which counsels this Court against awarding the same requested relief at this juncture. *See id.* Thus, the petition (Dkt. No. 1) is denied.

**1. Background**

In May 2010, Mucyo entered the United States near Houston, Texas, as a J-1 Non-Immigrant. Dkt. No. 1 at 6. On August 25, 2011, an Immigration Judge (IJ) ordered

Mucyo removed but granted her withholding of removal to Rwanda. *Id.* at 7; Dkt. No. 1-2 at 1. Her removal order became administratively final after the time to appeal had lapsed. *See* 8 CFR § 1241.1(c); Dkt. No. 8 at 2. Despite this, "the government apparently was not able to remove [Mucyo] to any other country at that time . . . and she continued living in the United States." Dkt. No. 8 at 2.

On September 12, 2026, Mucyo was taken back into custody by immigration officials. Dkt. No. 9 at 3. On September 28, 2026, Mucyo filed this habeas petition alleging that her continued detention may violate 8 U.S.C. § 1231 as construed in *Zadvydas* and the Due Process Clause of the Fifth Amendment. Dkt. No. 1 at 9–10. The Court ordered the respondents to respond on an expedited timeline (Dkt. No. 4), which they did (Dkt. No. 8). Mucyo filed a reply (Dkt. Nos. 9–10). The petition is ripe for review.

## 2. Legal Standards

### A. Writ of Habeas Corpus

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas*, 533 U.S. at 687–88. Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts[] and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

**B. Immigration Detention Under 8 U.S.C. § 1231**

Ordinarily, the government must remove an alien within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). During this "removal period," the government "shall detain" the alien. *Id.* § 1231(a)(2)(A). If the alien does not leave the country or is not removed within the removal period, the alien is "subject to supervision." *Id.* § 1231(a)(3). But under Section 1231(a)(6), the government "may" continue to detain certain aliens beyond the removal period if they are (1) inadmissible, (2) removable because of certain violations, or (3) are a risk to the community or unlikely to comply with the removal order.

By its terms, Section 1231(a)(6) does not impose any time limit on an alien's post-removal-period detention. Faced with "constitutional concerns" about indefinite detention, the Supreme Court in *Zadvydas* addressed how long the government may detain an alien under Section 1231(a)(6) while his removal is pending. 533 U.S. at 682. The petitioners there—two resident aliens with criminal histories—were detained under Section 1231 after receiving final removal orders. *Id.* at 684–86. In both instances the government continued to detain the petitioners past the 90-day removal period. *Id.* The petitioners each filed a habeas petition claiming that his continued detention violated due process. *Id.*

The Supreme Court first noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. To avoid these concerns, the *Zadvydas* Court construed Section 1231(a)(6) to permit detention of post-removal aliens only for "a period reasonably necessary to bring about [an] alien's removal from the United States." *Id.* at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized," *id.* at 699, and the alien is "eligible for conditional release" on an Order of Supervision. *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

Courts measure reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. They must also consider the Executive Branch's immigration expertise, "the serious administrative needs and concerns inherent in the necessarily extensive" efforts to enforce Section 1231, and "the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized in *Zadvydas* a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once the alien has satisfied his burden, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Accordingly, while not every non-removed alien must be released after six months, the parties' relative burdens may change as the duration of an alien's post-removal-period detention stretches on. *See id.*

Federal regulations govern some of the issues in this habeas petition as well. 8 C.F.R. § 241.4(l)(2)(iii) gives the government discretion to end an order of supervision "to enforce a removal order." Whether changed circumstances have arisen to permit removal are governed by 8 C.F.R. § 241.13. *See* § 241.4(b)(4). Section 241.13(a) "establishes special review procedures for those aliens who are subject to a final order of removal and are

detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

### C. Third-Country Removal

When the government seeks to remove an alien, it ordinarily commences removal proceedings, which require an evidentiary hearing before an IJ. 8 U.S.C. § 1229a. Removal proceedings determine both an alien's removability and ultimate destination. By default, an alien is entitled to select one country "to which the alien wants to be removed." 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). But if the alien does not select a country, the IJ will designate the country of removal and, if appropriate, alternative countries. 8 C.F.R. § 1240.10(f).

Federal law also provides aliens with certain protections—some discretionary, others mandatory—such as asylum, withholding of removal, and the Convention Against Torture (CAT). 8 C.F.R. § 1240.11(c)(1). Where an IJ finds that an alien is likely to be persecuted or tortured, that alien is entitled to mandatory protection through withholding of removal or the CAT, respectively. *See Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("These forms of relief require the noncitizen to show a greater likelihood of persecution or torture at home than is necessary for asylum, but the Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility."). But withholding of removal and CAT

protection are relevant only to the removable alien's destination; they are not wholesale protections against removal.

Thus, circumstances may arise where the government can still remove an alien to a "country whose government will accept the alien," even though that country was not authorized by an IJ. 8 U.S.C. § 1231(b)(2)(E)(vii). Such removals are called "third-country removals." Federal law prohibits third-country removals if "the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Likewise, the Foreign Affairs Reform and Restructuring Act of 1998, by codifying CAT protections, prevents aliens from being removed to any country where they would face torture. *See* 28 C.F.R. § 200.1; 8 C.F.R. §§ 208.16–18, 1208.16–18. In view of these protections against third-country removal, the question of what procedures the Constitution requires has been a topic of ongoing controversy. *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670 (2025); *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025).

### D. *D.V.D. v. United States Department of Homeland Security*

In April 2025, the District of Massachusetts certified an injunctive or declaratory (and thus non-opt-out) class under Federal Rule of Civil Procedure 23(b)(2) challenging ICE's new third-country removal procedures. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 385–86 (D. Mass. 2025). That court also issued a preliminary injunction ordering the government not to remove any class members to a third country without complying with specified procedures. *Id.* at 392–93. The court defined the non-opt-out class as

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378.

After a stay by the Supreme Court, the district court granted summary judgment and declared that class members have certain rights to notice and the opportunity to raise country-specific claims against proposed third-country removals. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 167–68. (D. Mass. 2026). The First Circuit affirmed in part, *D.V.D. v. U.S. Dep't of Homeland Sec.*, ___ F.4th ___, 2026 WL 2797801, at *20 (1st Cir. Sept. 18, 2026), and the Supreme Court granted certiorari, *D.V.D.*, 2026 WL 2917860, at *1. Argument is set for December 2026. *Id.*

### 3. Analysis

#### A. Mucyo's detention falls within *Zadvydas*'s presumptively reasonable six-month window.

To start, Mucyo concedes that her detention falls within *Zadvydas*'s presumptively reasonable six-month window. Dkt. No. 1 at 9 ("[Mucyo] does not contend that her present detention has exceeded the six-month period discussed in [*Zadvydas*]."). The respondents agree that her detention is within the presumptively reasonable window as contemplated in *Zadvydas*. Dkt. No. 8 at 3–4. Therefore, Mucyo's continued detention—which has been ongoing for about one month since her detainment by immigration authorities—is within

*Zadvydas*'s presumptively reasonable six-month window.[1] Mucyo's *Zadvydas* claim is thus premature and is denied on that basis.

### B. Mucyo's "fear of harm without adequate notice" claim belongs in the *D.V.D.* class action.

Mucyo also requests relief in the form of "advance written notice and a meaningful opportunity to present a country-specific protection claim . . . to reduce the serious risk of erroneous and irreparable deprivation." Dkt. No. 1 at 10. As noted by the respondents, Mucyo's pending third-country removal qualifies her as a member of the non-opt-out class certified by the District of Massachusetts. Dkt. No. 8 at 5–6. She is a class member "given that an alternate removal destination was not specifically identified in [Mucyo's] removal proceedings once [she] was granted withholding as to Rwanda." *Id.* at 6 (citing *Alsheref v. Noem*, No. 1:25-CV-190-H, 2025 WL 4220420, at *7 (N.D. Tex. Dec. 3, 2025)).

Recently, the District of Massachusetts granted summary judgment to the class and declared that class members have certain rights to notice and the opportunity to raise country-specific claims against proposed third-country removals. *D.V.D.*, 821 F. Supp. 3d at 167–68. The First Circuit has affirmed in part, *D.V.D.*, 2026 WL 2797801, at *20, but the Supreme Court has stayed that order. *D.V.D.*, 2026 WL 2917860, at *1.

Since she is in detention awaiting removal to a third country and was detained after February 5, 2025, she is a member of the class. *See Nasrabadi v. Villegas*, No. 1:25-CV-129, Dkt. No. 16 at 6–8 (N.D. Tex. Oct. 28, 2025). As a class member, she is "barred from pursuing [her] own individual lawsuit that seeks equitable relief within the subject matter of the class action." *Id.* at 7 (quoting *Green v. McKaskle*, 770 F.2d 445, 447 (5th Cir. 1985)).

[1] As of the date of this Order, Mucyo has been detained for 37 days.

To be sure, "[t]he fact that [Mucyo] may qualify as a member of the certified *D.V.D.* class does not, standing alone, resolve every issue concerning her detention or administrative custody review." Dkt. No. 9 at 12. However, for Mucyo's specific claims requesting notice prior to removal, the ongoing litigation and the Supreme Court's actions in the *D.V.D.* litigation are instructive, and this Court is wary to provide relief the Supreme Court has stayed. At this juncture, and because Mucyo is subject to a final order of removal and her detention is within *Zadvydas*'s six-month window, the Court declines to "preserv[e] [her] claim pending further guidance rather than dismissing it with prejudice." *Id.*

Finally, as the respondents identify, any fear-based claims for third-country removal in relation to her motion to reopen her immigration proceedings are properly lodged in the "administrative stream of the Executive Branch." Dkt. No. 8 at 8 (quoting *Camara v. Vergara*, No. 3:26-CV-2513-X, 2026 WL 2256694, at *5 (N.D. Tex. Aug. 5, 2026)). The Court thus denies the remainder of Mucyo's habeas petition.

**4. Conclusion**

For these reasons, Mucyo's habeas petition lacks merit. Her continued detention does not violate 8 U.S.C. § 1231 under *Zadvydas*, and the Court declines to grant her the individualized pre-removal notice she seeks. The petition (Dkt. No. 1) is denied.

So ordered on October 19, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE